

**FILED**

May 31 2017, 8:31 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

James E. Manley
New Castle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Aaron T. Craft
Matthew R. Elliott
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James E. Manley,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Gregory F. Zoeller, et al,<br>*Appellees-Defendants.* | May 31, 2017<br><br>Court of Appeals Case No.<br>33A05-1608-PL-1952<br><br>Appeal from the Henry Circuit Court<br><br>The Honorable Kit C. Dean Crane, Judge<br><br>Trial Court Cause No.<br>33C02-1509-PL-67 |

**Barnes, Judge.**

# Case Summary

James Manley appeals the trial court's dismissal of his complaint against the Indiana Department of Correction ("DOC") and Liberty Behavioral Health Corporation ("Liberty").[1] We dismiss and remand.

# Issue

The dispositive issue we address is whether Manley's appeal should be dismissed because the order he challenges was not a final judgment.

# Facts

In 1997, Manley was convicted of two counts of Class A felony child molesting and two counts of Class B felony child molesting. The victim was Manley's eight-year-old daughter. Manley received an aggregate fifty-five-year sentence. He currently has a projected earliest release date from the DOC of October 18, 2021.

Manley admitted his conduct to police but unsuccessfully sought to suppress that confession, and we affirmed his convictions on direct appeal. *See Manley v. State*, No. 53A04-9806-CR-333 (Ind. Ct. App. Feb. 18, 1999). After his initial direct appeal, Manley has filed a number of pro se, collateral challenges to his convictions, sentence, and treatment within the DOC, in both state and federal

---

[1] Manley also named the Attorney General and Commissioner of the DOC as defendants in their official capacities. We will refer to the Attorney General and Commissioner collectively with the DOC as one party. When this case was initiated, the Attorney General was Gregory Zoeller and the DOC Commissioner was Bruce Lemmon. Now, Curtis T. Hill, Jr. and Rob Carter fill those respective roles.

courts. *See, e.g., Manley v. Butts*, 71 N.E.3d 1153 (Ind. Ct. App. 2017); *Manley v. Indiana Dep't of Corr.*, No. 3:13-CV-1308 JD (N.D. Ind. July 6, 2015).

[5] In 1999, the DOC implemented the Sex Offender Management and Monitoring Program ("SOMM") with the goal of reducing sex offender recidivism. The provision of SOMM services is contracted out to Liberty. As of 2006, persons convicted of child molesting must participate in SOMM or face deprivation of good time credit, following amendment of Indiana Code Section 35-50-6-5 to expressly permit such deprivation.

[6] The SOMM program has three phases. The first is informing the prisoner of the program and the obtaining of consent from a prisoner to participate in it, followed by evaluation of the prisoner's risk of recidivism and treatment needs if consent is obtained. If a prisoner does not consent to participation in SOMM, it is considered a violation of DOC disciplinary rules.

[7] The second phase of SOMM, which begins three years before a prisoner's expected release, is participation in a treatment program based on their recidivism risk, the offense of which they were convicted, and/or their psychoeducational needs. Reports related to their treatment are forwarded to outside treatment providers when the offender goes on parole. Part of the required therapy during phase two of SOMM is that a prisoner discuss their sexual history and admit to any sexual offenses they have committed aside from the one for which they are incarcerated. If a prisoner is uncooperative in the treatment program they are subject to DOC discipline.

The third phase of SOMM begins when a prisoner transitions to parole. The offender is subject to supervision by a team consisting of at least a parole agent, a district coordinator, a treatment provider, and a polygraph examiner. The offender must also agree to a list of stipulations and conditions of parole more extensive than ordinary parolees. If the offender is unsuccessfully terminated from the SOMM program or does not cooperate with treatment before the parole period ends, parole may be revoked.

On May 9, 2016, Manley filed a "Complaint for Declaratory and Injunctive Relief/Challenge to the Constitutionality of a State Statute and IDOC Executive Directive." App. Vol. II p. 19. In addition to the DOC and Liberty, the complaint also named GEO Group, Inc. ("GEO") as a defendant; GEO is a private company that operates the DOC facility where Manley is housed.

Manley's complaint alleged that mandating his participation in SOMM or face losing credit time violated the federal Religious Freedom Restoration Act, Indiana's own Religious Freedom Restoration Act, the federal Religious Land Use and Institutionalized Persons Act, and his rights to freedom of religion under the federal and state constitutions. This complaint did not specify precisely how SOMM affects Manley's religious beliefs and practices. Manley also asserted that mandated participation in SOMM violated his due process and due course of law rights under the federal and state constitutions and also was an improper ex post facto punishment because the statute expressly permitting deprivation of credit time for not participating in a sex offender

treatment program was not passed until 2006, several years after Manley's offenses and convictions.

[11]     On June 15, 2016, Liberty filed a motion to dismiss the complaint under Indiana Trial Rule 12(B)(6) for failure to state a claim. On July 11, 2016, the DOC filed its own motion to dismiss. GEO never filed its own motion to dismiss or sought to join in either Liberty's or the DOC's motions to dismiss. On July 14, 2016, the trial court signed an order granting the DOC's motion to dismiss; this order was entered on the CCS on July 20, 2016. On July 18, 2016, Manley filed a motion for additional time to respond to Liberty's motion to dismiss, which the trial court never directly ruled upon. On July 21, 2016, the trial court entered a separate order granting Liberty's motion to dismiss; this order was entered on the CCS on the same date. Also on July 21, 2016, the CCS contains a second notation stating, "Record corrected to show ORDER GRANTING MOTION TO DISMISS shown entered on 7/21/2016 is a duplicate entry and stricken from the record." *Id.* at 8.

[12]     On August 4, 2016, the trial court filed-stamped Manley's proferred amended complaint. However, Manley submitted evidence, which the State does not dispute, that he deposited the amended complaint with the prison mail system on August 1, 2016. On August 15, 2016, the trial court entered an order stating that the amended complaint was not "a proper pleading as otherwise required by the Indiana Trial Rules" and that it would take no further action on the amended complaint. *Id.* at 18. Manley now appeals.

# Analysis

[13] We address one dispositive issue with respect to reviewing the dismissal of Manley's original complaint: whether it was an appealable final judgment. A judgment is final if:

> (1) it disposes of all claims as to all parties; [or]
>
> (2) the trial court in writing expressly determines under Trial Rule 54(B) or Trial Rule 56(C) that there is no just reason for delay and in writing expressly directs the entry of judgment (i) under Trial Rule 54(B) as to fewer than all the claims or parties, or (ii) under Trial Rule 56(C) as to fewer than all the issues, claims or parties[.]

Ind. Appellate Rule 2(H). An order that does not dispose of all issues as to all parties is not final. *Ramsey v. Moore*, 959 N.E.2d 246, 251 (Ind. 2012). Generally, a non-final order is not appealable unless it is an interlocutory order that is appealable as of right under Appellate Rule 14(A), or the appellant has sought and gained permission for a discretionary interlocutory appeal from the trial court and this court under Appellate Rule 14(B).[2] *See Ball State University v. Irons*, 27 N.E.3d 717, 720 (Ind. 2015). There is no question that the complaint was not dismissed as to GEO and therefore did not dispose of all issues as to all parties. There is no argument here that the trial court used the "magic language" of Indiana Trial Rule 54(B) to convert the partial dismissal of

---

[2] Interlocutory appeals also may be taken from orders denying or granting class-action certification. Ind. App. R. 14(C).

Manley's complaint into a final judgment, nor that it is interlocutory as of right, nor did Manley seek permission to file an interlocutory appeal.

[14] Until recently, it was understood that the lack of a final appealable order impacted an appellate court's "jurisdiction" to entertain an appeal and that dismissal of the appeal was required in such situations. *See, e.g., Ramsey*, 959 N.E.2d at 254; *Georgos v. Jackson*, 790 N.E.2d 448, 451 (Ind. 2003). Now, however, our supreme court has effectively overruled cases such as *Ramsey* and *Georgos* and held that, although a party who pursues an appeal from a non-final judgment has "forfeited" the right to appeal, the appellate court still has "jurisdiction" to consider the appeal on the merits. *In re D.J. v. Indiana Dep't of Child Servs.*, 68 N.E.3d 574, 579 (Ind. 2017). The court in *D.J.* proceeded to consider the merits of a child in need of services finding that was appealed before a dispositional order was entered, thus making it a non-final order; the court relied heavily upon the important parental rights at stake in such an order, as well as previous opinions from this court that had considered such orders on the merits, and noted that the purpose of the appellate rules is to achieve "'the ultimate end of orderly and speedy justice.'" *Id.* at 579-80 (quoting *American States Ins. Co. v. State ex rel. Jennings*, 258 Ind. 637, 640, 283 N.E.2d 529, 531 (1972)). The court emphasized that it is "never error for an appellate court to dismiss an untimely appeal" but that an appellate court may nonetheless exercise its discretion to consider a premature appeal on the merits. *Id.* at 579.

[15] We do not believe the *D.J.* opinion should be taken as an invitation to open the floodgates to premature appeals from non-final judgments. We decline to

consider the merits of the partial dismissal of Manley's complaint. It would be unorderly if we were to affirm that partial dismissal, only to have GEO still litigating the case and necessitating a potential second appeal by one of the parties in this matter sometime in the future. Nor should we offer our opinion on the merits of the dismissal before GEO has weighed in or sought dismissal in its own right. Additionally, the time constraints that are present in cases involving young children and their caregivers are absent here. Indeed, as the State points out, Manley has yet to enter phase two of the SOMM program, the actual treatment portion that would allegedly violate his constitutional rights, because he is not within three years of his expected release date. We conclude that dismissal of this appeal and a remand for further proceedings is the appropriate course of action.

[16] We also note some confusion in the record as to dismissal of this cause of action against Liberty. The trial court's order signed on July 14, 2016, only dismissed the complaint as to the DOC. The order signed on July 21, 2016, only dismissed the complaint as to Liberty. However, the trial court later that same day apparently struck that order from the record, incorrectly labeling it a duplicate of the July 14 order. It is unclear why the trial court took this action. On remand, the trial court should clarify its striking of the July 21 order of dismissal.

[17] On a final note, Manley has argued that the trial court improperly failed to follow local court rules regarding opportunities to respond to motions to dismiss. Henry County Circuit Court Rule 33-TR-12-1 states in part, "An

adverse party shall have 15 days after service of the movant's brief to file an answer brief. Failure to timely file briefs shall subject all motions filed pursuant to T.R. 12 to summary ruling." When a local rule employs mandatory language, the local court must follow its own rule. *Buckalew v. Buckalew*, 754 N.E.2d 896, 898 (Ind. 2001). The word "shall" generally is a mandatory term. *Indiana Civil Rights Comm'n v. Indianapolis Newspapers, Inc.*, 716 N.E.2d 943, 947 (Ind. 1999). Here, the trial court granted the DOC's motion to dismiss three days after it was filed; although Liberty had filed its motion to dismiss more than fifteen days prior, that is not the motion the trial court originally granted. Manley is a prolific pro se litigator. He has not, however, been classified as an "abusive litigant" under statutes, court rules, or inherent court authority that permit reasonable restrictions on such litigants. *Cf. Zavodnik v. Harper*, 17 N.E.3d 259, 264-65 (Ind. 2014).[3] Although pro se litigants such as Manley are held to the same standards as lawyers, they also are entitled to the same procedural protections as lawyers. *See Tam v. State Farm Mut. Auto. Ins. Co.*, 685 N.E.2d 1133, 1135 (Ind. Ct. App. 1997).

---

[3] The trial court stated in part in its order that Manley's amended complaint was "incoherent, insufficient and/or misinformed and without legal basis . . . ." App. Vol. II p. 18. We would not go that far as to say the amended complaint was incoherent or misinformed. We pass no judgment at this time on the legal merits of Manley's claims, but they are written coherently and with citation to relevant authority. The trial court also had previously allowed Manley's original complaint to proceed as non-frivolous under the prisoner litigation screening process found in Indiana Code Section 34-58-1-2.

# Conclusion

[18]     We dismiss this appeal and remand for further proceedings consistent with this opinion.

[19]     Dismissed and remanded.


Kirsch, J., and Robb, J., concur.